IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32756-6-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GARY LYLE STODDARD, | ) | |
| | ) | PUBLISHED OPINION |
| Appellant. | ) | |

FEARING, J. — Following Gary Stoddard's convictions for first degree murder and

first degree kidnapping, the sentencing court imposed legal financial obligations,

including a mandatory deoxyribonucleic acid (DNA) collection fee. Stoddard appeals the

financial obligations. He argues that the trial court failed to address his current or future

ability to pay the obligations. He also contends the mandatory DNA fee is

unconstitutional when a court has not first determined the defendant has the ability to

pay. We affirm Stoddard's sentence.

PROCEDURE

The underlying facts that support Gary Stoddard's conviction hold no relevance to

this appeal. A jury found Mr. Stoddard guilty of first degree murder and first degree kidnapping for the shooting death of his nephew's girlfriend. The trial court sentenced him to 440 months' incarceration and imposed legal financial obligations, including restitution of $18,159.22 to the crime victim's compensation fund, $500.00 as a crime victim assessment fee, $200.00 for the criminal case filing fee, and $100.00 for a DNA collection fee.

Gary Stoddard agreed to the restitution amount. Thus the trial court commented during the sentencing hearing: "I understand you have agreed to the 18-thousand amount. If there is anything further, you have to approve it. If you don't approve it, you have the right to a hearing." Report of Proceedings at 1190. Stoddard's judgment and sentence reads: "The court has considered the total amount owing, the defendant's present and future ability to pay legal financial obligations, including the defendant's financial resources and the likelihood that the defendant's status will change." Clerk's Papers at 237.

## ANALYSIS

Gary Stoddard contends that the trial court erred in imposing legal financial obligations without inquiring into his ability to pay. Stoddard did not object to the imposition of the financial obligations at sentencing. Nevertheless, Stoddard asks this court to exercise its discretion, pursuant to *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015) and remand for a hearing on his ability to pay the obligations. Stoddard's reliance

2

on *Blazina* is misplaced, however, since Stoddard's trial court only imposed mandatory legal financial obligations.

The trial court imposed a $500 victim assessment fee, a $200 criminal filing fee, and a $100 DNA collection fee. RCW 7.68.035, RCW 36.18.020(2)(h), and RCW 43.43.7541 respectively mandate the fees regardless of the defendant's ability to pay. Trial courts must impose such fees regardless of a defendant's indigency. *State v. Lundy*, 176 Wn. App. 96, 102, 308 P.3d 755 (2013). *Blazina* addressed only discretionary legal financial obligations.

Gary Stoddard agreed to the restitution amount. Thus, the invited error doctrine precludes review of the restitution judgment. *See State v. Young*, 63 Wn. App. 324, 330, 818 P.2d 1375 (1991). In *State v. Young*, this court held that the doctrine of invited error precluded the defendant from raising an argument on appeal that the restitution order requiring him to pay a homicide victim's child support obligation was not authorized by statute, when defendant agreed to restitution amount.

Gary Stoddard next argues, for the first time on appeal, that the imposition of a mandatory DNA collection fee without inquiry into ability to pay violates substantive due process principles. RCW 43.43.754 demands a biological sample, for purposes of DNA identification analysis, from an adult convicted of a felony. In turn, RCW 43.43.7541 imposes a $100 mandatory fee on the adult convicted of a felony to defray the cost of the collection of the sample. The latter statute reads, in relevant part:

3

> Every sentence imposed for a crime specified in RCW 43.43.754 must include a fee of one hundred dollars. The fee is a court-ordered legal financial obligation as defined in RCW 9.94A.030 and other applicable law. For a sentence imposed under chapter 9.94A RCW, the fee is payable by the offender after payment of all other legal financial obligations included in the sentence has been completed. For all other sentences, the fee is payable by the offender in the same manner as other assessments imposed. . . .

RCW 43.43.7541.

Gary Stoddard contends that the mandatory $100 DNA collection fee imposed under RCW 43.43.7541 violates principles of substantive due process because the trial court did not investigate his ability to pay the fee. Nevertheless, Stoddard did not challenge the constitutionality of the DNA collection fee before the trial court. We, therefore, decline to address the argument under the circumstances of this appeal.

A party may not generally raise a new argument on appeal that the party did not present to the trial court. *In re Det. of Ambers*, 160 Wn.2d 543, 557 n.6, 158 P.3d 1144 (2007). A party must inform the court of the rules of law it wishes the court to apply and afford the trial court an opportunity to correct any error. *Smith v. Shannon*, 100 Wn.2d 26, 37, 666 P.2d 351 (1983).

RAP 2.5(a) formalizes a fundamental principle of appellate review. The first sentence of the rule reads:

> **(a) Errors Raised for First Time on Review.** The appellate court may refuse to review any claim of error which was not raised in the trial court.

4

RAP 2.5. No procedural principle is more familiar than that a constitutional right, or a right of any other sort, may be forfeited in criminal cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it. *United States v. Olano*, 507 U.S. 725, 731, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993); *Yakus v. United States*, 321 U.S. 414, 444, 64 S. Ct. 660, 88 L. Ed. 834 (1944).

Good sense lies behind the requirement that arguments be first asserted at trial. The prerequisite affords the trial court an opportunity to rule correctly on a matter before it can be presented on appeal. *State v. Strine*, 176 Wn.2d 742, 749, 293 P.3d 1177 (2013). There is great potential for abuse when a party does not raise an issue below because a party so situated could simply lie back, not allowing the trial court to avoid the potential prejudice, gamble on the verdict, and then seek a new trial on appeal. *State v. Weber*, 159 Wn.2d 252, 271-72, 149 P.3d 646 (2006); *State v. Emery*, 174 Wn.2d 741, 762, 278 P.3d 653 (2012). The theory of preservation by timely objection also addresses several other concerns. The rule serves the goal of judicial economy by enabling trial courts to correct mistakes and thereby obviate the needless expense of appellate review and further trials, facilitates appellate review by ensuring that a complete record of the issues will be available, and prevents adversarial unfairness by ensuring that the prevailing party is not deprived of victory by claimed errors that he had no opportunity to address. *State v. Strine*, 176 Wn.2d at 749-50; *State v. Scott*, 110 Wn.2d 682, 685-88, 757 P.2d 492 (1988).

5

Countervailing policies support allowing an argument to be raised for the first time on appeal. For this reason, RAP 2.5(a) contains a number of exceptions. RAP 2.5(a)(3) allows an appellant to raise for the first time "manifest error affecting a constitutional right," an exception on which a criminal appellant commonly relies. Constitutional errors are treated specially under RAP 2.5(a) because they often result in serious injustice to the accused and may adversely affect public perceptions of the fairness and integrity of judicial proceedings. *State v. Scott*, 110 Wn.2d at 686-87. Prohibiting all constitutional errors from being raised for the first time on appeal would result in unjust imprisonment. 2A KARL B. TEGLAND, WASHINGTON: RULES PRACTICE RAP 2.5, at 218 (7th ed. 2014). On the other hand, "permitting *every possible* constitutional error to be raised for the first time on appeal undermines the trial process, generates unnecessary appeals, creates undesirable retrials and is wasteful of the limited resources of prosecutors, public defenders and courts," *State v. Lynn*, 67 Wn. App. 339, 344, 835 P.2d 251 (1992).

Washington courts and even decisions internally have announced differing formulations for "manifest error." First, a manifest error is one "truly of constitutional magnitude." *State v. Scott*, 110 Wn.2d at 688. Second, perhaps perverting the term "manifest," some decisions emphasize prejudice, not obviousness. The defendant must identify a constitutional error and show how, in the context of the trial, the alleged error actually affected the defendant's rights. It is this showing of actual prejudice that makes the error "manifest," allowing appellate review. *State v. O'Hara*, 167 Wn.2d 91, 99, 217

6

P.3d 756 (2009); *Scott*, 110 Wn.2d at 688; *Lynn*, 67 Wn. App. at 346. A third and important formulation for purposes of this appeal is the facts necessary to adjudicate the claimed error must be in the record on appeal. *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995); *State v. Riley*, 121 Wn.2d 22, 31, 846 P.2d 1365 (1993).

In *State v. Riley*, Joseph Riley argued that the admission of incriminating statements violated his Fourth Amendment to the United States Constitution rights because the statements were the fruit of an illegal search of his home. The state high court refused to entertain the argument because the record lacked clarity as to whether Riley uttered the statements before being told the investigating officer possessed a search warrant.

We consider whether the record on appeal is sufficient to review Gary Stoddard's constitutional arguments. Stoddard's contentions assume his poverty. Nevertheless, the record contains no information, other than Stoddard's statutory indigence for purposes of hiring an attorney, that he lacks funds to pay a $100 fee. The cost of a criminal charge's defense exponentially exceeds $100. Therefore, one may be able to afford payment of $100, but not afford defense counsel. Stoddard has presented no evidence of his assets, income, or debts. Thus, the record lacks the details important in resolving Stoddard's due process argument.

7

Gary Stoddard underscores that other mandatory fees must be paid first and interest will accrue on the $100 DNA collection fee. This emphasis helps Stoddard little, since we still lack evidence of his income and assets.

## CONCLUSION

We affirm Gary Stoddard's sentence.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Korsmo, J.

8